Shawn T. Welch, #7113
Andrew P. Revelle, #18518
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801)799-5800
stwelch@hollandhart.com
aprevelle@hollandhart.com

*Attorneys for Proposed Intervenor
Peak Minerals, Inc.*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> vs. <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES BUREAU OF LAND MANAGEMENT**, **ADAM G. SUESS**, in his official capacity as Acting Assistant Secretary for Land and Minerals Management, and **MICHAEL D. Gates**, in his official capacity as Bureau of Land Management West Desert District Manager, <br><br> Defendants, <br><br> and <br><br> **PEAK MINERALS, INC.**, <br><br> Proposed Intervenor. | **MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** <br><br> Civil Action No. 2:25-cv-00657-DBB <br><br> District Judge David Barlow |

## MOTION TO INTERVENE

Peak Minerals Inc. ("Peak Minerals") submits this Motion to Intervene and Memorandum in Support of Motion to Intervene pursuant to Federal Rule of Civil Procedure 24. For the good cause shown below, Peak Minerals requests the Court to grant its intervention as a party defendant.

Plaintiff Southern Utah Wilderness Alliance ("SUWA") filed this action against the United States Department of the Interior ("DOI") and the Bureau of Land Management ("BLM") to set aside the BLM Fillmore Field Office's July 2019 Final Environmental Impact Statement ("2019 FEIS"), August 2019 Record of Decision ("ROD"), 2025 Determination of National Environmental Policy Act ("NEPA") Adequacy ("DNA"), and June 10, 2025 DNR Decision Record ("DR") for the Sevier Playa Potash Project ("SPP Project") in Millard County, Utah. Peak Minerals owns the mineral leases and is the proponent of the SPP Project to develop potassium sulfate and associated minerals as authorized by the ROD. Peak Minerals invested substantial financial resources and thousands of hours working with the BLM to analyze the SPP Project in support of the FEIS, as well as to prepare the plans of development authorized under the ROD and DR. Decl. of Woods Silleroy ¶ 6. The FEIS, ROD, DNA, and DR were the product of years of review, analysis, and planning by Peak Minerals and the BLM, and any decision to set aside or modify these authorizations will have a significant impact on Peak Minerals' legally protectable interests in the SPP Project.

As the owner, operator, and project proponent, Peak Minerals has a legally protectable "interest relating to the property," and denial of intervention will "as a practical matter impair or impede[] [Peak Minerals'] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Peak Minerals

meets all the requirements of Rule 24 for intervention as of right and respectfully requests that the Court grant its Motion to Intervene.

Counsel for Peak Minerals conferred with counsel for the parties in this action and is authorized to state that the federal defendants and plaintiff SUWA take no position on this motion.

## MEMORANDUM IN SUPPPORT

**I.      BACKGROUND**

Peak Minerals[1] is a wholly-owned subsidiary of EMR Capital and is engaged in the development of potassium sulfate, also known as sulfate of potash, on the Sevier Playa. In 2011, Peak Minerals purchased potassium mineral leases for approximately 95,802 acres of federal land managed by BLM in the Sevier Playa area. Peak Minerals also entered into a cooperative development agreement with LUMA Minerals LCC to develop potassium mineral rights to an additional approximately 22,012 acres of federal land on the Sevier Playa. Further, in 2008, Peak Minerals obtained the potash leases for approximately 6,409 acres of state land on or adjacent to the Sevier Playa that are managed by the State of Utah's School and Institutional Trust Lands Administration. In total, Peak Minerals controls the rights to develop and operate the potassium leases for approximately 124,223 acres of land on or adjacent to the Sevier Playa. The SPP Project includes developments on both federal and state lands within this acreage. *See* Declaration of Woods Silleroy, a copy of which is attached as Exhibit A.

BLM issued a notice of intent to prepare a Draft Environmental Impact Statement ("DEIS") for the SPP Project in March 2014 based on Peak Minerals' Mining Plan. BLM worked closely

---

[1] At the time of the BLM's issuance of the FEIS and ROD, Peak Minerals was doing business as Crystal Peak Minerals and the BLM refers to Peak Minerals as Crystal Peak Minerals or "CPM" throughout the ROD and FEIS.

3

with federal, state, and local government agencies as well as invited Native American Tribes to analyze the numerous issues required by the National Environmental Policy Act ("NEPA"). FEIS at 1-11–1-14. BLM issued the DEIS in November 2018. After considering and incorporating comments from the public and federal agencies, BLM issued the FEIS in July 2019. *Id.* at 1-10. BLM then issued the ROD in August 2019, authorizing Peak Minerals to develop the SPP Project pursuant to the Mining Plan and approving the issuance of right of way grants to Peak Minerals. *See* ROD at 4.

In 2023, SUWA filed suit in this Court challenging the EIS and ROD. *See, generally, S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 2:23-cv-00492 (D. Utah). This Court granted voluntary dismissal of the case without prejudice on July 30, 2024. *Id.*, Order Granting Joint Motion to Dismiss Without Prejudice, Dkt. No. 56.

In September 2023, Peak Minerals began coordinating with BLM on proposed modifications to the Mining Plan. Complaint, Ex. 6 at 1. In September 2024, Peak Minerals submitted its finalized Modified Mining Plan to BLM for review. *Id.* at 2. After consulting with the public as well as other relevant federal, State, and tribal agencies, BLM issued the DNA on April 14, 2025, concluding that the 2019 FEIS satisfies the NEPA requirements for the Peak Minerals' proposed modifications to the Project under the Modified Mining Plan as well. *Id.* at 12–19. On June 10, 2025, BLM issued the DR, which approved the Modified Mining Plan based on the DNA. Complaint, Ex. 8.

In this new complaint, SUWA challenges the DNA and DR in addition to reiterating its challenges to the 2019 FEIS and ROD.

**II.     ARGUMENT**

Federal Rule of Civil Procedure 24 provides for intervention as of right and permissive intervention. *See* Fed. R. Civ. P. 24(a) & (b). As demonstrated below, Peak Minerals satisfies the requirements for both avenues of intervention under Rule 24.

**A.     Peak Minerals Merits Intervention as of Right Under Rule 24(a)(2).**

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

An applicant may intervene as of right under Rule 24(a)(2) if: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (internal citations omitted); *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). "This court has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *W. Energy All.*, 877 F.3d at 1164. Indeed, "[t]he factors of Rule 24(a)(2) are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation, and those factors are not rigid, technical requirements." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). Peak Minerals satisfies each of the four elements for intervention as of right.

### 1. *Peak Minerals' Motion to Intervention is Timely.*

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Ass'n of Counties*, 255 F.3d at 1250 (internal citations omitted); *see W. Energy All.*, 877 F.3d at 1164. In *Utah Ass'n of Counties*, the proposed intervenor moved to intervene nearly three years after the complaint was filed and the court still found that "the request for intervention [was] timely." *Id.* at 1250–51.

Here, Peak Minerals' intervention is timely, given the early stage of the litigation and the considerations of prejudice. SUWA filed its current complaint on August 7, 2025 and this Court very recently issued the scheduling order for the case on December 17, 2025. Complaint, Dkt. No. 1. Peak Minerals will comply with the Court's scheduling order. While granting intervention to Peak Minerals at this time poses no prejudice to SUWA or the Defendants, denying intervention would prejudice Peak Minerals by denying their ability to defend their significant interests imperiled by this litigation. Thus, Peak Minerals' motion to intervene is timely.

### 2. *Peak Minerals has an Interest in this Action.*

Under Rule 24(a)(2), an intervenor must "claim[] an interest relating to the property or transaction that is the subject of the action." "The interest element is a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *WildEarth Guardians*, 604 F.3d at 1198 (internal citations omitted). "A protectable interest is one that would be impeded by the disposition of the action." *W. Energy All.*, 877 F.3d at 1165 (internal citations omitted). Additionally, "[t]he threat of economic injury from

6

the outcome of the litigation undoubtedly gives a petitioner the requisite interest." *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

As the project proponent and owner of the leases analyzed in the FEIS and authorized for development under the ROD and DR, Peak Minerals has a direct and substantial interest in the property that is the subject of this action and will suffer significant economic injury in the event of an adverse decision. Peak Minerals has a substantial investment in the current and future development of the SPP Project, including costs incurred to prepare the FEIS, as well as expenses related to operational planning and development, contracting for services necessary to carry out the development, and maintaining its potassium mineral leases. Decl. of Woods Silleroy ¶¶ 5-7. Peak Minerals stands to lose significant revenue and economic return if the FEIS, DNA, ROD, or DR are modified, delayed, or set aside. *Id*. Accordingly, Peak Minerals satisfies the interest factor for intervention.

### 3. Peak Minerals' Interests may be Impaired as a Practical Matter if Intervention is Denied.

Under Rule 24(a)(2), an intervenor must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The impairment factor "presents a minimal burden." *W. Energy All.*, 877 F.3d at 1168 (citing *WildEarth Guardians*, 604 F.3d at 1199). To satisfy this element, the movant must only show that "it is 'possible' that the interest they identify will be impaired." *Id.* Moreover, "[t]his factor is met in environmental cases where the district court's decision would require the federal agency to engage in an additional round of administrative planning and decision-making that itself might harm the movants' interests, even if they could participate in the subsequent decision-making." *Id.*

7

Given that "the question of impairment is not separate from the question of existence of an interest," *Utah Ass'n of Cntys.*, 255 F.3d at 1253, Peak Minerals readily satisfies the impairment element for the reasons discussed above. SUWA's complaint requests this Court to, inter alia, (1) declare that BLM violated NEPA and the Administrative Procedure Act by approving the ROD and DR; (2) declare unlawful and set aside the FEIS, ROD, DNA, and DR; (3) enjoin BLM from taking any actions pursuant to the FEIS, ROD, DNA, or DR until they have complied with NEPA. Complaint at 23–24. If this Court denies intervention to Peak Minerals and grants any of SUWA's requests for relief, then Peak Minerals' substantial interests in developing the SPP Project will be impaired. Peak Minerals satisfies the impairment element for intervention.

### 4. Peak Minerals' Interest is Not Adequately Represented by the Existing Parties.

Lastly, Rule 24(a)(2) provides that an intervenor's interest must not be "adequately represent[ed] by existing parties." "The burden to satisfy this condition is 'minimal'" and "'the possibility of divergence of interest need not be great in order to satisfy the burden of the applicants.'" *W. Energy All.*, 877 F.3d at 1168 (citing *WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009)). The Tenth Circuit has "repeatedly recognized that it is on its face impossible for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *WildEarth Guardians*, 604 F.3d at 1200. Such potential divergence between these two interests exists where "the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would be-intervenor. . . even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest." *Utah Ass'n of Cntys*, 255 F.3d at 1256.

The Tenth Circuit has applied this principle to hold that the inadequate representation element is met when a case concerns federal land use decisions that are subject to the "multiple-use mandate" under the Federal Land Policy and Management Act ("FLPMA"). FLPMA requires BLM to "balance wide-ranging and often conflicting interests." *See W. Energy All.*, 877 F.3d at 1168–69 (emphasizing BLM's obligation under FLPMA to balance "multiple objectives" in overturning a denial of intervention for an applicant who sought to intervene in defense of a BLM leasing policy decision). Additionally, the Tenth Circuit has held that this element is met "when the would-be intervenor has expertise the government may not have." *Utahns for Better Transp.*, 295 F.3d at 1117 (citing *National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 382 (10th Cir. 1977)).

Here, the federal Defendants cannot adequately represent Peak Minerals' private economic and legal interests in this action. The ROD and DR authorize Peak Minerals to proceed with a carefully structured sequence of development, mitigation, and reclamation while the FEIS and DNA provide the foundation for these respective authorizations. Peak Minerals has carefully planned the Project to include specific design features to avoid, minimize, and mitigate potential impacts on specific resources including, inter alia, air quality, wildlife, vegetation, wetlands, riparian areas, water quality, and cultural resources. *See* Complaint, Ex. 1, ROD at 5–15; Complaint, Ex. 3, Amended Mining Plan at 9-5–9-14. Additionally, Peak Minerals has invested significant resources in incorporating special lease stipulations and conditions for resource protection into its mining plans for the SPP Project. Setting aside the FEIS, ROD, DNA, and DR would have a ripple effect on Peak Minerals' planning and activities in the development of the SPP Project. Decl. of Woods Silleroy ¶ 6.

The mining plans reviewed and approved in the FEIS, ROD, DNA, and DR are unique to Peak Minerals and are not represented by any other party. Only Peak Minerals can defend its interests. As explained in *WildEarth Guardians*, 604 F.3d at 1200, it is on its face impossible for BLM to carry out the task of protecting the public's interests and the private interests of Peak Minerals. Indeed, BLM must strike a balance between Peak Minerals' interests and the many other competing objectives that BLM is obligated to consider under FLPMA, "including but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historic values." 43 U.S.C. § 1702(c); *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 58 (2004); *see* ROD at 3 (noting BLM's responsibility under FLPMA to manage the Sevier Playa for "multiple uses"). Furthermore, as Peak Minerals is the project proponent and has designed and will be implementing the SPP Project, Peak Minerals has unique expertise in the development of the mineral resources that no other party has, including the federal Defendants. Accordingly, Peak Minerals' interests are not adequately represented by the existing parties.

As Peak Minerals satisfies the requirements for intervention as of right, Peak Minerals respectfully requests the Court to grant its Motion to Intervene under Rule 24(a)(2).

### B. Peak Minerals Also Meets the Standard for Permissive Intervention Under Rule 24(b).

In the alternative, should the Court determine that Peak Minerals does not merit intervention as of right under Rule 24(a)(2), Peak Minerals is entitled to permissive intervention under Rule 24(b). Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who. . . has a claim or defense that shares with the main action a common question of law or fact." Further, Rule 24(b)(3) provides that "[i]n exercising its discretion, the court must

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Peak Minerals' rights and interests in the FEIS, ROD, DNA, and DR are directly at issue in this lawsuit between SUWA and the federal Defendants. Peak Minerals has similar legal claims and defenses as the federal defendants with respect to compliance with the federal statutes and regulations at issue. Moreover, Peak Minerals' interests share with the main action substantially similar questions of fact with respect to any alleged environmental impacts arising from Peak Minerals' potash development. Lastly, as discussed above, Peak Minerals' intervention will not delay or prejudice the adjudication of the claims by the original parties.

In the unlikely event that Peak Minerals is not granted intervention as of right, the Court should grant Peak Minerals permissive intervention in this action to protect its rights and interests endangered by this dispute.

### III. CONCLUSION

For the foregoing reasons, Peak Minerals respectfully requests the Court to grant its Motion to Intervene as a party defendant. A copy of Peak Minerals' proposed response to SUWA's complaint is attached as Exhibit B. A proposed form of order granting this motion is submitted herewith and also attached as Exhibit C.

DATED this 23rd day of January, 2025.

> HOLLAND & HART LLP
> /s/ Shawn T. Welch
> Shawn T. Welch
> Andrew P. Revelle
> *Attorney for proposed Intervenor*
> *Peak Minerals, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January, 2025, I caused a true and correct copy of the foregoing Motion to Intervene and Memorandum in Support of Motion to Intervene, along with a proposed form of order, to be served by CM/ECF upon the addressee(s) listed below:

shannon.boylan@usdoj.gov
steve@suwa.org
hanna@suwa.org

*/s/ Shawn T. Welch*
Shawn T. Welch

# INDEX OF EXHIBITS

A.  -   Declaration of Woods Silleroy

B.  -   Response of Intervenor-Defendant Peak Minerals, Inc.

C.  -   Proposed Order Granting Motion to Intervene