UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF LAND MANAGEMENT; ADAM G. SUESS, in his official capacity as Acting Assistant Secretary for Land and Minerals Management; and MICHAEL D. GATES, in his official capacity as Bureau of Land Management West Desert District Manager,<br><br>Defendants.<br><br>PEAK MINERALS INC.,<br><br>Proposed Intervenor. | **MEMORANDUM DECISION AND ORDER GRANTING [23] MOTION TO INTERVENE**<br><br>Case No. 2:25-cv-00657-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Proposed Intervenor Peak Minerals Inc.'s ("Peak Minerals") Motion to Intervene pursuant to Federal Rule of Civil Procedure 24.[1] Peak Minerals seeks to intervene in the dispute between Plaintiff Southern Utah Wilderness Alliance ("SUWA") and Defendants United States Department of the Interior ("DOI"), Bureau of Land Management ("BLM"), Adam G. Suess in his official capacity as Acting Assistant Secretary for Land and Minerals Management, and Michael D. Gates in his official capacity as Bureau of Land Management West

---

[1] Corrected Mot. to Intervene ("Motion"), ECF No. 23, filed Jan. 26, 2026.

Desert District Manager (collectively "Defendants"). For the reasons below, the court grants Peak Minerals's motion.

## BACKGROUND

SUWA is a non-profit organization that advocates for the preservation of "wilderness-quality and wild public lands in Utah."[2] BLM, a federal agency under DOI, manages public lands nationwide, including Utah.[3] At issue here is the Sevier Lake bed—also known as the Sevier Playa—located in Utah's West Desert.[4] In August 2019, DOI's then-Assistant Secretary for Lands and Minerals issued a Record of Decision ("ROD") setting aside about 125,000 acres in the West Desert for potash mining (the "SPP Project").[5] The decision would have permitted Peak Minerals, the owner of the relevant mineral leases,[6] to begin large-scale surface mining operations and establish rights-of-way across the Sevier Lake bed.[7]

On July 31, 2023, SUWA filed its initial Complaint, seeking judicial review of BLM's ROD under the Administrative Procedure Act ("APA").[8] In 2024, the court granted voluntary dismissal of the suit without prejudice after Peak Minerals submitted a proposed amended mining plan to BLM intended to replace and supersede the 2019 mining plan that formed the basis for BLM's 2019 ROD.[9]

---

[2] Compl. ¶¶ 16–17, ECF No. 1, filed Aug. 7, 2025.
[3] *Id.* at ¶ 24.
[4] *Id.* at ¶¶ 1, 4; *see West Desert District Office*, U.S. Department of the Interior: Bureau of Land Management, https://www.blm.gov/office/west-desert-district-office [https://perma.cc/G53R-VY3B].
[5] Compl. ¶ 5. "The term 'potash' refers to mineral and chemical salts that are rich in potassium. It is mined from naturally occurring ore deposits and its primary use is in agricultural fertilizers[.]" *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012) (en banc).
[6] Decl. of Woods Silleroy ("Silleroy Decl.") ¶¶ 3, 5, ECF No. 23-1, filed Jan. 26, 2026.
[7] Compl. ¶ 6.
[8] Docket for Case No. 2:23-cv-00492-DBB-DBP (Compl., ECF No. 1, filed July 31, 2023).
[9] Compl. at ¶ 7; Motion 4.

On August 7, 2025, SUWA filed the Complaint in this matter, seeking judicial review of the ROD, BLM's 2025 Determination of National Environmental Policy Act ("NEPA") Adequacy ("DNA"), and June 10, 2025 DNR Decision Record ("DR").[10] SUWA alleged the 2025 DNA erroneously concluded BLM's 2019 environmental analysis of the SPP Project sufficiently analyzed the modified project.[11] The parties have not opposed the motion.[12]

## DISCUSSION

Rule 24 of the Federal Rules of Civil Procedure provides for intervention as of right and permissive intervention. The court first discusses whether Peak Minerals merits an intervention by right.

Under Rule 24(a), a court must allow a movant to intervene in a pending action if: "(1) the application is timely; (2) [the movant] claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties."[13] The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene."[14] The court addresses each element in turn.

---

[10] Compl. at ¶¶ 1, 61.
[11] *Id.* at ¶ 1.
[12] *See* ECF No. 25 ("Plaintiff [SUWA] takes no position on Peak Minerals'[s] Motion."). Federal Defendants have failed to timely respond. *See* ECF No. 27 (BLM "did not respond to the Motion"); Docket.
[13] *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) (citation omitted); Fed. R. Civ. P. 24(a) ("On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.").
[14] *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (citing *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996)).

I. **The Motion to Intervene Is Timely.**

First, a movant must demonstrate that its motion to intervene is timely. "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'"[15]

Here, the litigation is in a relatively early stage: although the court has issued a scheduling order, no party has filed a dispositive motion.[16] Peak Minerals filed its motion five and a half months after SUWA's Complaint and asserts it will comply with the Scheduling Order.[17] Moreover, it appears no prejudice would result to the parties.[18] For these reasons, the motion to intervene is timely.

II. **Peak Minerals Meets Its Burden to Show an Interest Related to the Dispute.**

Next, the movant must show it has an interest related to the property or transaction at issue. "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination[.]"[19] Courts "require that the interest in the proceedings be

---

[15] *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U. S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)).
[16] *See* Docket; ECF No. 18, filed Dec. 17, 2025 (Scheduling Order). *See also Utah Ass'n of Cntys.*, 255 F.3d at 1250 (concluding that a motion to intervene filed nearly three years after the complaint was timely).
[17] *See W. Energy All.*, 877 F.3d at 1164–65 (finding as timely a motion to intervene when it was filed less than two months after the complaint).
[18] *See* ECF Nos. 25, 27 (parties' lack of opposition).
[19] *Coal. of Ariz./N.M. Cntys.*, 100 F.3d at 841 (citation omitted).

direct, substantial, and legally protectable."[20] "A protectable interest is one that would be impeded by the disposition of the action."[21] An interest may also be economic in nature.[22]

Peak Minerals meets its burden to show a direct and substantial interest. Since 2011, it has worked with BLM to plan the potash mining project.[23] More importantly, it owns the mineral leases related to the SPP Project.[24] And it has spent over $100 million "designing, sequencing, and otherwise planning" the SPP Project.[25] Thus, the court concludes Peak Minerals has a direct and substantial economic interest in the litigation.

### III. Peak Minerals Sufficiently Shows that the Litigation May Impair Its Interests.

Next, the putative intervenor "must have an interest that could be adversely affected by the litigation."[26] This impairment element "presents a minimal burden."[27] Movants must merely "show it is 'possible' that the interests they identify will be impaired."[28] Courts apply "'practical judgment' when 'determining whether the strength of the interest and the potential risk of injury to that interest justify intervention.'"[29] "This factor is met in environmental cases where the district court's decision would require the federal agency to engage in an additional round of

---

[20] *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted).
[21] *W. Energy All.*, 877 F.3d at 1165 (internal quotation marks omitted) (quoting *San Juan County v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013)).
[22] *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1393 (10th Cir. 2009) ("[T]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." (cleaned up)).
[23] Silleroy Decl. ¶ 5.
[24] *Id.* at ¶ 3.
[25] *Id.* at ¶ 6.
[26] *Kane Cnty.*, 928 F.3d at 891 (citation omitted).
[27] *W. Energy All.*, 877 F.3d at 1167 (citing *WildEarth Guardians v. Nat'l Park Ser.*, 604 F.3d 1192, 1199 (10th Cir. 2010)).
[28] *W. Energy All.*, 877 F.3d at 1167 (quoting *WildEarth Guardians*, 604 F.3d at 1199); *see Barnes*, 945 F.3d at 1123 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").
[29] *Kane Cnty.*, 928 F.3d at 891 (citation omitted).

administrative planning and decision-making that itself might harm the movants' interests, even if they could participate in the subsequent decision-making."[30]

SUWA moves the court to declare BLM violated NEPA and the APA when it approved the Sevier Lake ROD and DR; to declare the project unlawful; and to enjoin BLM from taking further action respecting the ROD, DNA, 2019 Environmental Impact Statement ("EIS"), or DR until it fully complies with NEPA and the APA.[31] Should the potash mining project falter due to a decision in SUWA's favor, Peak Minerals may lose significant revenue.[32] Thus, Peak Minerals has an interest that may be impaired by the instant action.

### IV. Peak Minerals Demonstrates that the Existing Parties Do Not Adequately Represent Its Interests.

Finally, Peak Minerals must show that the existing parties may not adequately represent its interest. "This burden is minimal, and it is enough to show that the representation may be inadequate."[33] "[R]epresentation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case."[34] However, the Tenth Circuit has "repeatedly recognized that it is on its face impossible for a government agency to carry the task

---

[30] *W. Energy All.*, 877 F.3d at 1167 (citing *WildEarth Guardians*, 604 F.3d at 1199).
[31] Motion 2, 7; Compl. ¶¶ 5, 13.
[32] Silleroy Decl. ¶ 6.
[33] *Kane Cnty.*, 928 F.3d at 892 (internal quotation marks omitted) (quoting *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).
[34] *Sanguine*, 736 F.2d at 1419.

of protecting the public's interests and the private interests of a prospective intervenor."[35] Courts may also consider whether the movant "has expertise the government may not have."[36]

      Peak Minerals holds a singular interest in the action. The mining plans reviewed and approved in BLM's contested decisions in this case are unique to Peak Minerals and are not represented by any other party.[37] Peak Minerals also worked with BLM, the Utah School and Institutional Trust Lands Administration, and others "to plan and design the SPP Project to facilitate development of sulfate of potassium under Peak Minerals'[s] leases in an environmentally responsible manner."[38] As Peak Minerals asserts, the ROD and DR allow the company to engage in a "carefully structured sequence of development, mitigation, and reclamation" expected to last several decades.[39] BLM might, absent Peak Minerals's intervention, be "placed in the position of defending both public and private interests."[40] After all, the agency "'has multiple objectives' in managing [mineral] leasing, as under the multiple-use mandate, it is required to balance wide-ranging and often conflicting interests."[41] Furthermore, Peak Minerals has special knowledge as to the project.[42]

---

[35] *WildEarth Guardians*, 604 F.3d at 1200 (citation and internal quotation marks omitted); *see Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[S]uch a situation . . . creates the kind of conflict that 'satisfies the minimal burden of showing inadequacy of representation.'" (quoting *Utah Ass'n*, 255 F.3d at 1255)). "[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public" because "the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Utah Ass'n*, 255 F.3d at 1256.
[36] *Utah Ass'n*, 255 F.3d at 1255.
[37] Motion 9.
[38] Silleroy Decl. ¶¶ 3, 5.
[39] Motion 9; Compl. ¶ 8a.
[40] *WildEarth Guardians*, 604 F.3d at 1200.
[41] *W. Energy All.*, 877 F.3d at 1169 (citing 43 U.S.C. § 1702(c)); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 57 (2004) ("'Multiple use management' is a deceptively simple term that describes the enormously complicated task of striking a balance among the many competing uses to which land can be put, 'including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and [uses serving] natural scenic, scientific and historical values.'" (alteration in original) (quoting § 1702(c))).
[42] Silleroy Decl. ¶ 7.

In sum, Peak Minerals has invested considerable resources[43] in the project, has expertise, and likely will not have its interests redundantly represented by BLM due to the agency's multiple-use mandate. Thus, Peak Minerals has "made the minimal showing necessary to suggest that [the parties'] representation may be inadequate."[44]

All four elements support Peak Minerals's intervention by right under Federal Rule of Civil Procedure 24(a). For this reason, the court need not address whether Peak Minerals should be allowed to permissively intervene pursuant to Rule 24(b).[45]

## ORDER

Accordingly, Proposed Intervenor Peak Minerals's Motion to Intervene is GRANTED.[46]

Signed February 19, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[43] Peak Minerals has invested tens of thousands of hours and over $100 million in the project. Silleroy Decl. ¶ 6.
[44] *Coal. of Ariz./N.M. Cntys.*, 100 F.3d at 846.
[45] Fed. R. Civ. P. 24(b)(1)(B); Motion 10–11.
[46] ECF No. 23.