# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br>     Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR**, *et al.*, <br><br>     Defendants, <br><br> and **PEAK MINERALS, INC.**, <br><br>     Intervenor-Defendant. | **DECLARATION OF RAY BLOXHAM** <br><br> Case No. 2:25-cv-00657-DBB-JCB <br><br> District Judge David Barlow <br> Magistrate Judge Jared Bennett |

I, **RAY BLOXHAM**, declare as follows:

1. I have personal knowledge of each of the facts set forth below, and if called upon to do so, could and would testify regarding the following. This declaration is filed in support of the Southern Utah Wilderness Alliance ("SUWA")'s Complaint and Opening Brief in the above-captioned matter.

2. I am the Field Director for SUWA, where I have worked since 1999. The Field Director position requires me to spend considerable time on the ground visiting public lands throughout Utah. In this capacity I have traveled extensively through the public lands in Utah, including the lands that will be directly and indirectly affected by the Sevier Playa Potash Project ("SPP Project").

3. I am an active member of SUWA.

4.      SUWA, based in Salt Lake City, Utah, has approximately 12,000 members, many of whom reside in Utah. SUWA's mission is to preserve the outstanding wilderness and other sensitive public lands across Utah, and to manage these lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education; supports both administrative and legislative initiatives to permanently protect Utah's wild places within the National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national levels; and provides leadership within the conservation movement through its advocacy for wilderness preservation.

5.      SUWA members and staff have a well-demonstrated interest in the preservation and protection of Utah's remarkable Bureau of Land Management ("BLM")-managed public lands, as well as in BLM's compliance with federal environmental laws and the preservation and protection of climate wildlife, water, and visual resources in the region. SUWA takes an active role in providing information to the BLM regarding the agency's day-to-day management activities and participates in all levels of the BLM's decision-making process.

6.      SUWA members and staff also participate in information gathering and dissemination, education and public outreach, commenting upon proposed government actions, and other activities relating to the management of and impacts on BLM lands, including those at issue in the SPP Project. SUWA members benefit from BLM's compliance with federal environmental laws and agency regulations and expect that BLM will comply with those laws and regulations.

7.      For years, SUWA and its members have worked to protect wilderness-quality

2

lands in Utah, including those in and near the SPP Project, because those areas support environmental values of significant importance, including but not limited to, air quality and climate, migratory birds and other wildlife, visual resources and dark night skies, and water resources. Thus, SUWA, its staff, and its members have direct interests in the SPP Project challenged in this action.

8.      In addition, SUWA's members and staff regularly use and enjoy the public lands that will be impacted by the SPP Project for a variety of purposes, including sightseeing, hiking, photography, wildlife and waterfowl viewing, solitude, and aesthetic appreciation of the surrounding area's natural and wild values, and intend to continue doing so.

9.      SUWA members' and staff's recreational, aesthetic, scientific, informational, and other interests are directly affected by BLM's original 2019 decision to approve the SPP Project and allow large-scale surface mining operations across the entire 125,000-acre Sevier Lake bed, as well as its 2025 decision to authorize amendments to the SPP Project that divide the Project into phases, extending both the estimated life and total production of the mine. The SPP Project—both as originally conceived and currently planned—will industrialize this incredibly remote, quiet, and dark area of Utah's West Desert because it involves the construction and operation of evaporation ponds, dikes, roads, powerlines, a processing facility, and a rail loadout facility.

10.      I use and enjoy the public lands and natural resources both within and surrounding the SPP Project area for many health, recreational, spiritual, educational, aesthetic, and other purposes. For decades I have hiked, explored, camped, photographed, and otherwise appreciated the lands within and in close proximity to the SPP Project area.

3

11.     I have spent considerable time visiting and working to protect the lands surrounding the SPP Project, most recently in February 2026. I have also spent a substantial amount of time experiencing the lands within the SPP Project and its surrounding natural landscapes for my personal recreation activities. Some of my visits include hiking at the terminus of Sevier River as it enters Sevier Lake. Additionally, I've hiked in both the Red Tops and Black Hills Mountains west of Sevier Lake and, on dozens of adventures, I've hiked extensively within Notch Peak, Howell Peak and Swasey Mountain Wilderness Study Areas to the northwest and with a clear view of the lake.  I travel Highway 50 multiple times a year for both work and for pleasure. I have circumnavigated the Lake on the surrounding roads and travel Crystal Peak Road often. From all of these locations I can easily see the Sevier Lake bed and the lands that will be directly disturbed and impacted by the approved SPP Project. When I visit these areas, I enjoy the vastness, natural quiet, and emptiness of the Sevier Lake bed, especially when it has standing water that provides spectacular reflections of clouds and surrounding land features.

*Looking southeast across Sevier Lake and toward the Cricket Mountains. Credit: Ray Bloxham/SUWA*

12. Additionally, having spent many days and nights camping, hiking, and working in the mountains surrounding Sevier Lake, it is difficult to imagine a lesser-traveled and underappreciated swath of wilderness-quality lands in Utah. The industrial-scale development authorized by BLM for the SPP Project, with its light and noise polluting impacts, would dramatically alter the experience and character of the surrounding wilderness-quality lands I enjoy, even if the lakebed is not directly in view. I intend to continue visiting the Sevier Lake bed and surrounding BLM-managed lands as often as possible, but certainly within the next year to hike, camp, look for wildlife, seek solitude, feel the isolation of the landscape, and enjoy the scenic views.

13. BLM's decisions authorizing the SPP Project adversely affect my health,

recreational, spiritual, educational, and other interests. The Project will introduce industrial-level light and noise pollution into this quiet, dark, and exceptionally serene environment, alter water resources, emit new air pollution and greenhouse gas emissions, and impact important habitat for migratory birds utilizing the Pacific Flyway. Construction of the Project's evaporation ponds, dikes, access roads, powerlines, a processing plant, and a rail loadout facility will damage vegetation, disturb soils, and mar the natural landscapes I cherish. Additionally, my interests are adversely affected by BLM's repeated failures to sufficiently and accurately analyze and disclose the SPP Project's impacts, while ultimately approving unacceptable levels of harm to the natural environment.

14.    My injuries and harms discussed above will be prevented by a judgment from this Court 1) declaring that Defendants' decisions to authorize the SPP Project (both originally and as amended) violated the National Environmental Policy Act ("NEPA"), its implementing regulations, and the Administrative Procedures Act ("APA"); 2) declaring unlawful and vacating the SPP Project's 2019 Final Environmental Impact Statement ("FEIS"), 2019 Record of Decision ("ROD"), 2025 Determination of NEPA Adequacy ("DNA") and 2025 DNA Decision Record ("DR"); and 3) enjoining Defendants and Defendant-Intervenor Peak Minerals, Inc. from taking any actions pursuant to the SPP Project FEIS, ROD, DNA, or DR until they have complied with NEPA, its implementing regulations, and the APA.

I DECLARE, under the penalty of perjury, that the foregoing is true and correct.

DATED: March 13, 2026                    Ray Bloxham